Denio, Ch. J., (dissenting.)
There was sufficient evidence for
the jury to have found, if the case had been submitted to them, that the receipts upon which the plaintiff advanced his money were false and fictitious, and that they were fabricated to enable *610 Wright, and the person calling himself Samuel Ford, or one of them, to defraud the plaintiff.
There being no such wheat delivered to the defendants or héld in store by them as the papers professed to represent, the first question is, whether this action can be sustained, even upon the assumption that the defendants are legally responsible in some form for the acts of Wright. Whatever the form of this action might have been called, when pleadings were technical, it is quite clear that the complaint presents a case of an alleged tortious interference by the defendants with the rights of property of the plaintiff as the owner of a quantity of wheat. It contains the elements of replevin in the deiinet, to 'which it is also assimilated by the prayer that the grain may be delivered to the plaintiff. It also contains, argumentatively, the elements of an action of trover, for it alleges property in the plaintiff, possession by the defendant, and a demand and refusal, which is the usual evidence in such cases of a conversion. It does not allege that the storehouse receipts were false or fictitious, but it relies upon them as though, they were valid, and sets out a title under them as operative papers.
The plaintiff’s counsel does not controvert this view of the effect of the complaint, or the rule that replevin and trover will, in general, only lie for specific personal property; but he insists that the defendants are estopped to deny that the wheat referred to in the receipts was actually on hand in their storehouse when the plaintiff demanded it.. But I am of opinion that the doctrine of estoppel cannot be applied to such a case. The effect of an estoppel in pais is to oblige the party affected by it to respond to the one entitled to the benefit of it, to .the same extent as though the facts actually existed according to the representations made. The judges and jury and sheriff are not required to shut their eyes, and by an effort of the imagination to-produce the circumstances represented by the defendant, and to act in conducting the trial and in the machinery of the process as though these supposed circumstances had a real existence. Replevin and trover will only lie in respect to actual and specific personal property, and *611 Neither of these actions can be sustained to recover for a breach of promise, or for damages arising out of deceit or misrepresen-tation respecting alleged chattels which never had an existence. In Austen v. Craven (4 Taunt., 644), the plaintiff sued in trover for 50 hogsheads of sugar. It appeared that one Kruse had purchased that quantity of sugar of the defendants, to be delivered at a future time, but the contract was executory, no particular hogsheads of sugar passing from the defendants to Kruse; but the latter sold the sugar referred to in his contract to the plaintiff. The plaintiff gave notice of his intended purchase to the defendants, and inquired whether they had 50 hogsheads of sugar belonging to Kruse, and whether he, the plaintiff, might safely purchase them of Kruse and pay him the price; to which they answered in the affirmative, and said they had the. 50 hogsheads, and would deliver them. The plaintiff, accordingly, paid Kruse the money, -but the defendants, on a demand subsequently made, refused to deliver any sugar. The plaintiff’s counsel urged the estoppel in this manner: “It appears by the defendants’ admissions (referring to what they said in answer to the plaintiff’s inquiry), that these goods had been separated from the bulk of their stock, for they said they had the 50 hogsheads belonging to Kruse, which they would deliver to the plaintiff. If they had any 50 hogsheads of that quality in their warehouse, they must, after that declaration, be deemed to have appropriated them to the plaintiff, and could not say they were not his property.” A motion to set aside the verdict and enter a nonsuit was granted. Sir James Mansfield, Chief Justice of the Common Pleas, said: “ Trover cannot be maintained but for specific goods. Any sugars of required quality would have answered this contract. It is a contract for a certain quantity of a specified quality,” &c. The facts constituting the estoppel were of precisely the same character, and just as strong, as those in the case before us. Chapman v. Searle (3 Pick., 38), at first view would seem to be in conflict with Austen v. Craven, but I think it is not in fact. Ludlow was the purchaser of 300 barrels of beef of the defendant, and received from him a bill of parcels and a *612 receipt in full for the price, and a certificate stilting that he (defendant) had received 300 barrels of beef in store for him, Ludlow. The plaintiffs .were Ludlow’s assignees under an , insolvent’s assignment, and they demanded the beef of the 'defendant, who refused to deliver it, when they brought.this action of trover. The defendant, it was shown, had considerable quantities of beef in different parts of Boston. The • defendant, it seems, undertook to prove ¿hat the papers did not exhibit the real transaction; that it was merely a paper arrangement; that no goods were sold and delivered or held by the defendant on storage for Ludlow. The great question was, the court said, whether such parol testimony was admissible; 'and they held it was not. Judgment was given for the plaintiff. They said that, as between the defendant and Ludlow, the writing must be taken to be conclusive evidence of the fact. The case seems to me to have been put upon the rule of evidence referred to, and not upon the effect of an estoppel, though the judge who delivered the opinion did say that the defendant was estopped to deny that he h'ad these goods. What renders it certain, however, that the judgment was put upon the rule of evidence that the writing could not be contradicted, is that it was considered that Ludlow himself might have brought the action. He certainly could have done so if the plaintiff could maintain it, for there was no communication between him an$l the defendants. Besides, they parted with nothing as the consideration of Ludlow’s assignment, and obviously stood only in his place. As between Ludlow and the defendants there was no pretence of any estoppel, except such a one as the rule of evidence referred to always creates. There Is a case of Harding v. Carter, reported in Park on Insurance (p. 4), which seems to be more in point, and, if good law, would change the opinion to which I am inclined. The defendants, insurance brokers, wrote to the plaintiff that they had effected two policies of insurance on his interest in certain property, which they had not done, the letter having been written by mistake by a clerk. Lord Mansfield held the defendants as insurers, and allowed the plaintiff to recover the value of the *613 policies in an action of trover. It seems right enough to hold the defendants in such a case liable as insurers, if the plaintiffs had acted on the letter; but I do not so well understand how they could be charged for converting two policies which the plaintiffs’ evidence showed never had an existence. Unless the case is distinguishable from the general one by considerations connected with the law of insurance, I should be disposed to consider it overruled by Austen v. Graven. It is at 'best only a nisi prius case, and has not found its way into any regular series of reports'.
For these reasons, I am in favor of affirming the order appealed from.
Davies and Wright, Js., also dissented.
Order reversed, and judgment for the plaintiff.